NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH PACKNETT,<br><br>  Plaintiff,<br><br>  vs.<br><br>S. PATRAKIS, et al.,<br><br>  Defendants. | No. C 08-02517 JF (PR)<br><br>ORDER GRANTING MOTION<br>FOR SUMMARY JUDGMENT<br><br><br>(Docket Nos. 34, 39 & 46) |

Plaintiff, a California prisoner incarcerated at the San Quentin State Prison ("SQSP"), filed in pro se the instant civil rights action pursuant to 42 U.S.C. § 1983 against SQSP prison officials. The Court found the complaint, when liberally construed, stated some cognizable claims. Defendants Iannone, Fox, Petrakis and Ayers filed a motion for summary judgment on the grounds that (1) Defendants did not violate Plaintiff's constitutional rights, and (2) Defendants are entitled to qualified immunity. Plaintiff filed opposition to Defendant's summary judgment motion, and Defendant filed a reply. After reviewing the complaint and all submitted papers, the Court concludes that Defendants are entitled to summary judgment and will GRANT Defendants' motion.

**DISCUSSION**

I. **Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is 'no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The court's function on a summary judgment motion is not to make credibility

determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028-29 (9th Cir. 2001).

**II.     Legal Claims and Analysis**

Plaintiff raised the following cognizable claims: 1) prison officials violated due process in conspiring to "inflict massive group punishment and purposeful retaliation" because the search of North Block was nothing more than "an exercise of uncontrollable rampage and destruction of property, en masse," (Compl. 15); 2) SQSP officials acted with deliberate indifference to his serious medical needs as a diabetic, (Compl. 16); and 3) SQSP conspired to deprive and interfere with his civil rights.

     **A.     Statement of Facts**

It is undisputed that Plaintiff is a "Type II Insulin Dependent Diabetic" and receives insulin shots twice a day. Plaintiff is also inflicted with kidney insufficiency, chronic asthma, significant hypertension, angina and major depressive disorder with psychotic features. On or about October 25, 2006, methadone medication was stolen from the North Block Nursing Station. Not long afterward, the culprit turned himself in but failed to return all of the missing pills. A total lock down and complete search of the building and cells was ordered and initiated.

According to the complaint, on October 26, 2006, the ongoing cell search caused a five hour delay before the prisoners in first tier of North Block, including Plaintiff, were

released to the "chow hall." (Compl. at 7.) Plaintiff alleges that he had to spend another four to five hours in the chow hall, where it was extremely cold and he was forced to stand more than he was able to sit. (Id.) Then on October 27, 2006, after a body search, Plaintiff discovered swelling of his "lower calve, [sic] shin and feet area." (Id.) He was not able to see a physician until October 30, 2006, at which time he was admitted to Marin General Hospital and diagnosed with "congestive heart failure," "elevated hypertension and blood sugar." (Id. at 8-9.) Plaintiff alleges that the denial of food for five hours caused his "kethacide reaction." (Id. at 9.)

### 1. Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Accord Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (same); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985) (contention that actions "arbitrary and capricious" sufficient to allege retaliation).

The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). Retaliatory motive may be shown by the timing of the allegedly-retaliatory act and inconsistency with previous actions, as well as direct evidence. Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003).

The prisoner bears the burden of pleading and proving absence of legitimate correctional goals for the conduct of which he complains. <u>Pratt</u>, 65 F.3d at 806. At that point, the burden shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. <u>See</u> <u>Schroeder v. McDonald</u>, 55 F.3d 454, 461-62 (9th Cir. 1995) (defendants had qualified immunity for their decision to transfer prisoner to preserve internal order and discipline and maintain institutional security).

Defendants contend that Plaintiff fails to meet his burden because he cannot show that they undertook the search for the missing methadone pills because Plaintiff had engaged in "protected conduct" or that the search did not serve a legitimate penological interest. (Defs.' Mot. at 7-8.) Defendants deny that the search was conducted in an "enraged frenzy," or that it was an "uncontrollable rampage and destruction of property, en masse." (Compl. at 15.) Defendants have submitted the declaration of Defendant R. Fox, which states that Defendant Fox briefed the search crews about the missing pills. (<u>See</u> Fox Decl. at 2) (Docket No. 36). The crews were divided into two-person search teams, and "scribes" were assigned to assist with the documentation of the search. (<u>Id.</u>) The searches were conducted in an orderly manner, with no visible destruction or mistreatment of inmate property. (<u>Id.</u>) In opposition, Plaintiff provides the declaration several inmates stating the contrary. (Oppo. at 7-10.)

The Court finds that Plaintiff has failed to show that the search itself, notwithstanding the disputed manner in which it may have been conducted, served no legitimate penaological purpose, *i.e.*, to recover stolen medication. <u>See</u> <u>Pratt</u>, 65 F.3d at 806. Plaintiff has also failed to identify what "protected conduct" was the cause of the alleged retaliatory search. Accordingly, the Court finds that Plaintiff's allegations do not establish that Defendants acted in retaliation in conducting the search for missing methadone pills. Accordingly, Defendants are entitled to judgment on this retaliation claim as a matter of law. <u>See</u> <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 323 (1986).

///

## 2. Deliberate Indifference

Plaintiff's second claim is that SQSP officials acted with deliberate indifference to his serious medical needs as a diabetic following the October 26, 2006 search of North Block. Specifically, Plaintiff claims that the denial of food for five hours while he was forced to wait in a cold chow hall was the cause of a "ketchacide reaction" for which he required hospitalization.[1] (Compl. at 9.) Plaintiff's third claim alleges that Defendants conspired to deprive him of his civil rights, *i.e.*, his right to medical attention.

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. See McGuckin, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not

---

[1] Plaintiff provides no definition for "kethcide." Therefore the Court can only address the merits of the specific medical symptoms Plaintiff alleges.

only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). A finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, however. Neither a finding that a defendant's actions are egregious nor that they resulted in significant injury to a prisoner is required to establish a violation of the prisoner's federal constitutional rights, McGuckin, 974 F.2d at 1060, 1061 (citing Hudson v. McMillian, 503 U.S. 1, 7-10 (1992) (rejecting "significant injury" requirement and noting that Constitution is violated "whether or not significant injury is evident")), but the existence of serious harm tends to support an inmate's deliberate indifference claims, Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing McGuckin, 974 at 1060).

Defendants do not dispute that Plaintiff, as a diabetic, has an "objectively serious medical need," see Lolli v. County of Orange, 351 F.3d 410, 419 (9th Cir. 2003), and therefore is able to satisfy the first prong of the test for deliberate indifference. (Defs.' Mot. at 10.) Defendants argue that Plaintiff nevertheless fails to state a claim for deliberate indifference because Plaintiff has not shown that Defendants purposefully failed to respond to his medical needs and that Plaintiff suffered harm due to their alleged indifference. (Id.) Defendants deny that they delayed in providing access to food or any other item that Plaintiff required. (Id. at 12.)

In support of their motion, Defendants submitted the declaration of SQSP's Chief Medical Officer, E. Tootell, which testifies to the medical care provided to Plaintiff since his arrival at SQSP. (See Tootell Decl. at 1-3) (Docket No. 35). Dr. Tootell states, and

1  Plaintiff does not dispute, that on October 26, 2006, Plaintiff's blood sugar was checked
2  and that insulin was administered to him on a regular basis.  It is undisputed that on
3  October 27, 2006, Plaintiff was taken to the infirmary after complaining of dizziness, lack
4  of strength and weakness in legs, (Compl. at 8; Oppo. at 14; Decl. Tootell at 2), where he
5  was examined by a nurse who found swelling in both lower legs.  (Id.)  The nurse
6  recommended that Plaintiff be seen by a doctor on the next business which was Monday,
7  October 30, 2006, as no physician was on hand over the weekend.  (Compl. at 8.)  As
8  promised, Plaintiff was examined on October 30, 2006, by a SQSP physician to whom
9  Plaintiff complained of increased swelling and a "tremendous pressure" on his chest which
10 he felt when lying on his back.  (Id.)  Consistent with Plaintiff's complaints, the medical
11 records reflect that the physician noted the "lower extremity edema [*i.e.*, swelling,] and
12 orthopnea (the inability to breathe comfortably while lying flat)."  (Decl. Toolett at 2.)
13 Plaintiff was promptly admitted to Marin General Hospital for evaluation of the edema and
14 chest pain.  (Id.)

15       Plaintiff claims that he suffered "congestive heart failure," which he takes from the
16 physician's notes from the October 30, 2006 examination.  However, Dr. Toolett's
17 declaration states that the "presumptive diagnosis at admission was an *evaluation for*
18 congestive heart failure" but that no studies or evaluation supported that diagnosis.  (Id.,
19 emphasis added.)  At the hospital, Plaintiff received the following treatment: 1) medication
20 was prescribed to help decrease the edema; 2) a cardiac stress test was administered with
21 reassuring results; and 3) a cardiac echo revealed a "left ventricular hypertrophy and an
22 ejection fraction of 77% with moderate left atrial enlargement."  (Id.)  The tests also
23 indicated that the right side of Plaintiff's heart was normal.  (Id.)  Accordingly, Plaintiff's
24 claim that he suffered "congestive heart failure" is not supported by the record.

25       The diagnosis regarding Plaintiff's edema on his discharge back to SQSP was that
26 of lower extremity edema likely associated with nifiedipine use.  According to Dr. Tootell,
27 lower extremity edema is commonly found in patients taking calcium channel blockers
28 like nifiedipine.  (Id.)  There is no support in the record to support Plaintiff's claim that

1   his edema was a direct result of the alleged denial of food for five hours.

2         Plaintiff's claim of "elevated hypertension and blood sugar," (Compl. at 8-9), is
3   also in doubt as Dr. Tootell's declarations states that while Plaintiff did have an elevated
4   blood pressure of 167/94, Plaintiff's blood sugar was normal at 80. (Decl. Tootell at 2.)
5   Plaintiff's vital signs were normal when he was examined by a nurse on October 27, 2006.
6   (Id. at 2.) There is no evidence to suggest that Defendants unreasonably delayed when
7   they advised Plaintiff to rest in his cell and elevate his feet over the weekend until a
8   physician was available to see him on the next business day.

9         In his opposition, Plaintiff repeats his assertions that the injuries he suffered after
10  the October 26, 2006 search were directly caused by the denial of food for five hours.
11  (Oppo. at 9.) However, it is clear that Defendants' actions did not amount to deliberate
12  indifference to Plaintiff's serious medical needs. The evidence submitted by Defendants
13  show that Plaintiff's blood sugar was checked and insulin was administered to him during
14  October 2006. When Plaintiff complained of dizziness and weak legs on October 27,
15  2006, he was promptly seen by a nurse who recommended he be seen by a physician the
16  next business day, which was the following Monday. Plaintiff's vitals at that time were
17  normal and Plaintiff did not indicate that he was suffering any pain to the nurse.
18  Accordingly, there was no indication that Defendants knew that Plaintiff faced a
19  substantial risk of serious harm and disregarded that risk by failing to take reasonable steps
20  to abate it. See Farmer, 511 US at 837. In other words, Defendants did not act
21  unreasonably by waiting for Plaintiff to see a physician at the next earliest time available,
22  *i.e.*, the next business day. Meanwhile, Plaintiff was advised to rest in his cell and elevate
23  his legs over the weekend. Furthermore, there is no dispute that Defendants continued to
24  provide for Plaintiff's regular diabetic needs throughout the weekend. Plaintiff first
25  complained of chest pains when he was examined by a physician on October 30, 2006, at
26  which time he was promptly hospitalized for further evaluation of the edema and
27  orthopnea. In sum, Plaintiff has failed to show a purposeful act or failure to act on the part
28  of Defendants which resulted in harm. See McGuckin, 974 F.2d at 1060.

Having reviewed the pleadings and all submitted papers on this matter, the Court finds that Plaintiff's allegations do not establish that Defendants acted with deliberate indifference to his serious medical needs. Accordingly, Defendants are entitled to judgment on this claim as a matter of law. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).

### 3. Conspiracy

Plaintiff's third claim alleges that Defendants conspired to deprive him of his civil rights, *i.e.*, his right to medical attention. Defendants are also entitled to summary judgment with respect to this claim. In order to state a cognizable conspiracy claim under § 1983, plaintiff must allege that a constitutional right was violated – conspiracy, even if established, does not give rise to liability under § 1983 unless there is such a deprivation. Woodrum v. Woodword County, 866 F.2d 1121, 1126 (9th Cir. 1989). The Court has found that Defendants have not violated Plaintiff's Eighth Amendment right. Because there has been no deprivation of a constitutional right, there is no basis for liability on Plaintiff's conspiracy claim. Id.

## CONCLUSION

For the foregoing reasons, Defendants Iannone, Fox, Petrakis and Ayers' motion for summary judgment (Docket No. 34) is GRANTED.[2]

All claims against Defendants Mendoza and Grannis are DISMISSED for failure to state a claim as Plaintiff's claims against these two defendants are based on the claims raised against the defendants to whom summary judgment has been granted.

The clerk shall terminate all pending motions (Docket Nos. 39 and 46) as MOOT.

This order terminates Docket Nos. 34, 39 and 46.

IT IS SO ORDERED.

DATED: 9/22/09

JEREMY FOGEL
United States District Judge

---

[2] Because the Court finds that no constitutional violation occurred, it is not necessary to reach Defendants' qualified immunity argument.

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

KENNETH J. PACKNETT,

        Plaintiff,

  v.

S. PATRAKIS, et al.,

        Defendants.

Case Number: CV08-02517 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on  9/24/09 , I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Kenneth Jerome Packnett C94858
CA State Prison at San Quentin
1-N-37-L
San Quentin, CA 94974

Dated:  9/24/09

                                    Richard W. Wieking, Clerk